RECEIVED

SEP 30 2019

AT 8:30 M
WILLIAM T. WALSH
CLERK

FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

Stephen G. Bolling

(Enter above the full name of the plaintiff in this action)

V.

Bruce Davis, Administrator NJSP;
(FNU) Hansen, corrections officer NJSP;
Melissa DeFlorie, psychologist NJSP;

(Enter the full name of the defendant of defendants in this action)

COMPLAINT

Civil Action No. _______

(To be supplied by the Clerk of the Court)

---

INSTRUCTIONS; READ CAREFULLY

1. This complaint must be legibly handwritten or typewritten, signed by the plaintiff and subscribed to under penalty of perjury as being true and correct. All questions must be answered concisely in the proper space on the form. Where more space is needed to answer any question, attach a separate sheet.

2. In accordance with Rule 8 of the Federal Rules of Civil Procedure, the complaint should contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short plain statement of the claim showing that you are entitled to relief, and (3) a demand for judgment for the relief which you seek.

3. You must provide the full name of each defendant or defendants and where they can be found.

4. You must send the original and one copy of the complaint to the Clerk of the District Court. You must also send one additional copy of the complaint for each defendant to the Clerk. Do not send the complaint directly to the defendants.

5. Upon receipt of a fee of $400.00 (a filing fee of $350.00, and an administrative fee of $50.00), your complaint will be filed. You will be responsible for service of a separate summons and copy of the complaint on each defendant. See Rule 4, Federal Rule of Civil Procedure.

6. **If you cannot prepay the $400.00 fee**, you may request permission to proceed in forma pauperis in accordance with the procedures set forth in the application to proceed in forma pauperis. See 28 U.S.C. §1915. (If there is more than one plaintiff, each plaintiff must separately request permission to proceed in forma pauperis.)

7. **If you are given permission to proceed in forma pauperis, the $50.00 Administrative Fee will not be assessed.** The Clerk will prepare and issue a copy of the summons for each defendant. The copies of summonses and the copies of the complaint which you have submitted will be forwarded by the Clerk to the United States Marshal, who is responsible for service. The Marshal has USM-285 forms you must complete so that the Marshal can locate and serve each defendant. If the forms are sent to you, you must complete them in full and return the forms to the Marshal.

## QUESTIONS TO BE ANSWERED

1a. Jurisdiction is asserted pursuant to (CHECK ONE)

_✓_ 42 U.S.C. §1983 (applies to state prisoners)

____ Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and 28 U.S.C. § 1331 (applies to federal prisoners)

If you want to assert jurisdiction under different or additional statutes, list these below:

______________________________________________

1b. Indicate whether you are a prisoner or other confined person as follows:

__ Pretrial detainee

__ Civilly-committed detainee

__ Immigration detainee

_✓_ Convicted and sentenced state prisoner

__ Convicted and sentenced federal prisoner

__ Other: (please explain) N/A ______________

2. Previously Dismissed Federal Civil Actions or Appeals

If you are proceeding in forma pauperis, list each civil action or appeal you have brought in a federal court while you were incarcerated or detained in any facility, that was dismissed as frivolous or malicious, or for failure to state a claim upon which relief may be granted. Please note that a prisoner who has on three or more prior occasions, while detained in any facility, brought an action or appeal in a federal court that was dismissed as frivolous or malicious, or for failure to state a claim upon which relief may be granted, will be denied in forma pauperis status unless that prisoner is under imminent danger of serious physical injury. See 28 U.S.C. § 1915(g).

a. Parties to previous lawsuit:

Plaintiff(s): Stephen Bolling *note: Ive had three actions dismissed for failure to state a claim yet im in/under presently occuring danger of serious physical & psychological harm and my legal claims are losing meterious facts, witnesses & proofs dai[ly]

Defendant(s): Howard Beyer, Roy Hendrix's, Michelle Ricci

b. Court and docket number: Unknown

c. Grounds for dismissal: ( ) frivolous ( ) malicious

(✓) failure to state a claim upon which relief may be granted

d. Approximate date of filing lawsuit: Unknown

e. Approximate date of disposition: Unknown

If there is more than one civil action or appeal, describe the additional civil actions or appeals using this same format on separate sheets.

3. Place of Present Confinement? Trenton Prison

4. Parties

(In item (a) below, place your name in the first blank and place your present address in the second blank. Do the same for additional Plaintiffs, if any.)

a. Name of plaintiff: Stephen G Bolling

Address: New Jersey State Prison 3rd & Federal Sts Trenton, NJ 08625

Inmate#: 208254 — SBI* 000790911A

b. First defendant:

Name: Mr Bruce Davis

Official position: Administrator

Place of employment: New Jersey State Prison 08625

How is this person involved in the case?

(i.e., what are you alleging that this person did or did not do that violated your constitutional rights?)

Mr. Bruce Davis is the Administrator of the New Jersey State Prison. He is legally Responsible for the operation of New Jersey State Prison and for the welfare of All the inmates of that prison, as well as permitting Bolling to be harassed, threatend & beaten.

c. Second defendant:

Name: Unknown (Commissioner) NJDOC

Official position: Commissioner NJDOC

Place of employment: NJDOC Whittlesey Rd. Trenton, NJ 08625

How is this person involved in the case?

(i.e., what are you alleging that this person did or did not do that violated your constitutional rights?)

Mr/s Commissioner is the NJDOC Commissioner whom Allowed Plaintiff Bolling to be Abused, harassed, threatend & beaten badly for Refusing Prison transfer over A 10 month period in Attempt to moot, delay or default A prison sexual assault & battery case.

d. If there are more than two defendants, attach a separate sheet. For each defendant specify: (1) name, (2) official position, (3) place of employment, and (4) involvement of the defendant.

5. I previously have sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in the Statement of Claims on page 6.

✓ Yes ___No

If your answer is "Yes," briefly describe the steps taken, including how relief was sought, from whom you sought relief, and the results.

I have written directly to the Administration Head Mr. Bruce Davis by way of inmate grievance, inquiry, disciplinary appeals for help overcoming the harassments, frustrations, assaults, sexual assault & battery & physical battering and Davis refuses to interact with or help me or allow me to fully grieve out my complaints in attempt to manipulate my special needs mind to default

If your answer is "No," briefly explain why administrative remedies were not exhausted.

Not Applicable

6. Statement of Claims

(State here as briefly as possible the facts of your case. Describe how each defendant violated your rights, giving dates and places. If you do not specify how each defendant violated your rights and the date(s) and place of the violations, your complaint may be dismissed. Include also the names of other persons who are involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach a separate sheet if necessary.)

I was sexually/physically assaulted & Battered on 23 Nov 18 while residing on prison Mental Health Crisis Stabilization Unit 2EE close video observation. Denied food for dinner, forced to sleep on prison floor, eat cold peanut butter or cheese sandwiches All 3x meals reduced calorie, forced exist in nudity & eat finger sandwiches without soap & eventually water to wash urine & feces soiled hands. I was placed into punitive dry cell without water, forced to sleep on floor with rats & roaches and I'm wasn't acting disruptfully, suicidal or assaultive

On 24 Jan 19 I was assaulted & batterd, on 1 May 19 I was brutially assaulted & batterd, on 4 June 19 I was assaulted & batterd viciously, Prison SID unit has video of all beatings. Defendants instituted, or reasonably should have known, a campaign of harassment, frustration, & assaults were launched against me ten (10) days after the sexual assault & battery when I refused the defendant Commissioner offer to "send me anywhere I wanted to go" immediately from Ad-segregation punishment unit but I refused so that the sexual assault SID investigation would continue but i didnt tell anyone that was reason I refused, I chose to stay at Trenton where defendants literally beat or had me physically assaulted & batterd regularly, my property stolen with personal info & legal info filings, not given breakfast, lunch, dinner meals, not allowed to sanitize my living quarters, had my personal mail delayed delivery, denied medical aid as I hurt so bad all over my head, neck & body im on both Asprin & motrin which my body doesnt respond to & they cause intestinal bleeds, ive had fractured eye socket & ribs during this time from beatings & denied reasonable medical care; Psychologically I've been placed on PTSD psych meds about 2 weeks after sexual assault/battery, emotionally I may just break down crying & rocking this evening Sun 22 Sept 19 when I put this into mail to Fed Judge, im not given any psych counseling for trauma in attempts to distort my reality as if nothing has happened to me for past year, ive been falsely charged and convicted of assaults, falsely charged with assault, defendants orcastrated my reality to make it appear as if I was doing wrong by withholding evidence including OPRA purchases, they have conspired to falsely charge me with institutional infractions & more believe it or not! I survived like I did my messed up childhood & a falsified criminal conviction for 6 murders resulting from a traffic accident that would have not occurred if pursuing state trooper didnt try ramming me off roadway or/and overtaking my vehicle blocking my view at accident site. I ran from these troopers cause like now all I have ever known from authority figures is violence, abuse & pain & they had nightsticks in hand when I hadnt done nothing criminally wrong. Ive survived all this but this time I hid journal notes of everything even though Im Autistic/dyslexic mentally challenged, to help all inmates, especially special needs. They violated every U.S. const. Right I have by their actions & or inactions.

7. Relief

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

Anything the Honorable Judge deems just & fair. I can try to trust a Federal Judge as my criminal one wasnt very equatible or just by not allowing me lesser included offense charge of trespass to auto burglary & this triggered auto burglary felony murder. I only ask things get better, especially for mental health inmates like our own facility.

My life is pretty much over but it was good in prison for 35 yrs I Killed 6 people - I did that - I Killed 6 beautiful people even if it wasnt murder and Scott Wishart trooper lied & court system manipulated my Autistic ASS way back then. Its all okay I just want the victims family to learn what, how happened to their loved ones. They & death demands Accountability!

Bye thank You All

Dated Sun 5 30pm 22 Sept 19 Stephen Bolling

oh yeah - I tried to exhaust institutional remedies but defendants won't permit me.

8. Do you request a jury or non-jury trial? (Check only one)

( ) Jury Trial (X) Non-Jury Trial

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 22 day of September, 2019

Stephen A Bolling

Signature of plaintiff*

(*EACH PLAINTIFF NAMED IN THE COMPLAINT MUST SIGN THE COMPLAINT HERE. ADD ADDITIONAL LINES IF THERE IS MORE THAN ONE PLAINTIFF. REMEMBER, EACH PLAINTIFF MUST SIGN THE COMPLAINT).

1) Stephen G. Bolling, 2) Those Similarly Situated,

Plaintiffs,

v.

1) F&L name Unknown; Comissioner, New Jersey Department of Corrections, NJDOC
2) Bruce Davis; Administrator, New Jersey State Prison, NJSP
3) Charles Sears, Asst. Comissioner, NJDOC At NJSP,
4) (FNU) Hansen, Correction Officer, NJSP
5) (FNU) Santos, Correction Officer, NJSP
6) (FNU) Mohommad, Correction Officer, NJSP
7) (FNU) Archebald, Correction Officer, NJSP
8) Dr. Flora Defilippo, Psychologist, NJSP
9) Dr. Melissa Dettore, Psychologist, NJSP
10) F&L name Unknown; Director Medical, NJSP sub contractor
11) F&L name Unknown; Director Mental Health, NJSP sub contractor
12) (FNU) Poupart; correction officer, NJSP
13) (FNU) Mandapt; correction officer, NJSP
14) (FNU) Groninger; Correction Officer, NJSP
15) (FNU) Stuart; Correction Officer, NJSP
16) (FNU) W. Gray, Correction Officer, NJSP
17) Brian Pator, Sergeant, NJDOC At NJSP
18) (FNU) Newsom, Correction Officer, NJSP
19) (FNU) Reyes, Correction Officer, NJSP
20) (FNU) McLean, Correction Officer, NJSP
21) (FNU) Waters, Sergeant, NJDOC At NJSP
22) (FNU) E. Jennings, Correction Officer, NJSP
23) (FNU) Zetti, Correction Officer, NJSP
24) (FNU) Manpoing, Sergeant, NJDOC At NJSP
25) (FNU) Peterson, Lieutenant, NJDOC At NJSP
26) F&L Name Unknown; Director, New Jersey Parole Board
27) F&L Name Unknown; Administrator, Classification NJDOC At NJSP
28) F&L Name Unknown; Law Librarian Lead, NJSP
29) John Doe # 30-49
30) Jane Doe # 50-69

Defendants.

Complaint

Civil Action Number ________

## I. Jurisdiction & Venue

1. This is a civil action authorized by U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (A)(3). Plaintiff Stephen Bolling seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff Bolling's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2. The Trenton District of New Jersey is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occurred.

## II. Plaintiffs

3. Plaintiff Stephen G. Bolling IMN-#208254/SBI-#000790911A is and was at all times mentioned herein a prisoner of the State of New Jersey

in the custody of the New Jersey Department of Corrections. He is currently confined in New Jersey State Prison (NJSP), in Trenton, New Jersey where he has been for almost all of the past thirty-five years since being convicted/sentenced to a single Life/30 yr max/min sentence for a traffic accident in 1986. Plaintiff Bolling is an original class member of the civil action C.F. v. Terhune CA# 96-1840 (AET) and classified as a 'Special Needs' inmate as that term is defined therein due to autistic & dyslexic challenges he faces.

4. 'Those similarily situated' are the New Jersey Department of Corrections (NJDOC hereafter) inmates classified currently as a 'Special Needs' inmate for the most part and at times will also refer to the NJDOC general inmate population, administrative segregation, protected custody, medical and/or Management Control Unit closed housing inmates.

## III. Defendants

5. Defendant (First & Last Name Unknown) is the Comissioner of the NJDOC. He is legally responsible for the operation of NJSP and every New Jersey penological entity headed through Department of Corrections (DOC), and for the welfare of all the inmates within NJDOC, & actions of officers

6. Defendant Bruce Davis is the Administrator of NJSP. He is legally responsible for the operation of NJSP and for the welfare of all the inmate within NJSP & actions of NJDOC personnel at NJSP under his supervision.

7. Defendant Charles Sears is the Assistant Comissioner to the Comissioner of the NJDOC. He is legally responsible for the supervision of operations of NJSP, the welfare of all inmates within NJSP & actions/inactions of all NJDOC personnel within NJSP

8. Defendants Hansen, Santos, Mohammad, Archebald, Poupart, Mandapt, Groninger, Stuart, W. Gray, Newsom, Reyes, Mehran, E. Jennings, Zetti, (First names unknown at this juncture) are all, and were at all times mentioned in this complaint, held the rank of prison guard and were assigned to the NJDOC at NJSP, and responsible for plaintiff Bolling's welfare.

9. Defendant Dr. Flora DeFilippo (Psychologist) was at all relevant times mentioned in this action, the lead Outpatient psychiatrist/psychologist of Mental Health Department and is legally/was legally responsible for the operation of Mental Health Outpatient Unit at NJSP and for the welfare of all Mental Health Outpatient inmates of NJSP. Defendant Dr. DeFilippo has departed with NJDOC at NJSP since around February 2019.

10. Defendant Dr. Melissa Dettore (Psychologist) was at all relevant times mentioned as such a psychologist employed at NJDOC at NJSP by sub contractor NJDOC mental Health providers and was/is responsible for the welfare of Plaintiff Bolling & Special Needs inmates outpatient at NJSP. Since Dr. DeFilippo's departure Dr. M. Dettore has assumed lead Outpatient psychiatrist/psychologist responsibilities with NJDOC at NJSP.

11. Defendant (first & Last Name Unknown) is the Director/Administrator for New Jersey United Medicine & Dentistry (NJUMaD), a sub-contracting division

providing medical services to prison inmates. NJUMAD is awarded such contracts by way of competitively bidding dollar amounts to provide health care for the State of New Jersey and as such NJUM&D services are impacted by the bottom dollar. NJUM&D Administrator is legally responsible for the operation of NJDOC, at all times mentioned in this complaint, medical services provided and/or lack thereof, at the NJSP where plaintiff Bolling resided and was/is directly responsible for his welfare and all inmates of that prison, at all times mentioned herein.

12. Defendant (first & last name unknown) is the Director/Administrator for Correctional Behavioral Care Solutions (CBS), a sub-contracting division providing medical services to prison inmates. CBS is awarded contracts by way of competitively bidding dollar amounts to provide psychological care for the State of New Jersey and as such CBS services are impacted by the bottom dollar. CBS Administrator is legally responsible for the operation of NJDOC, at all times mentioned in this complaint, psychological services provided and/or lack thereof, at the NJSP where plaintiff Bolling resided and was/is directly responsible for his welfare and all inmates of that prison, at all times mentioned herein.

13. Defendants Brian Pator, [First Name Unknown] Waters, [First Name Unknown] Manpang, are all, and were at all times mentioned in this complaint, held the ranks of prison sergeants and were assigned to the NJDOC at Trenton NJSP, and were responsible for plaintiff Bolling's welfare and actions of NJDOC prison guards under their area purview. At NJSP, at all times mentioned herein.

14. Defendant (FNU) Peterson is and was at all times mentioned in this complaint, held the rank of prison lieutenant and was assigned to the NJDOC at Trenton NJSP. Lieutenant Peterson was responsible for inmate Bolling's welfare and actions/inactions of NJDOC prison sergeants and guards at the NJSP under their purview, at all times mentioned herein.

15. Defendant (first & last name unknown) is the director/administrator for the NJDOC Parole Board. S/he is directly responsible for the operation/implementations of laws, rules & regulations of NJDOC Parole Board and the administration of justice, fairness, due process and welfare to all NJDOC inmates, including, but not limited to those defined as Special Needs, and all NJDOC Parole Board members actions/inactions, at all times mentioned herein.

16. Defendant (first & last name unknown) is the director/administrator for the NJDOC classification members at NJSP and satellite facilities. S/he is directly responsible for the operation/implementations of laws, rules & regulations of NJDOC classification departments and the administration of justice, fairness, due process and welfare to all NJDOC inmates, including, but not limited to those defined as Special Needs, and the actions/inactions of all classification members, at all times mentioned herein.

17. Defendant (first & last name unknown) is the head legal librarian at all times mentioned herein for the NJDOC at NJSP Trenton. S/he is directly responsible for the assistance/operations of the NJSP legal law library in aiding all NJDOC at NJSP inmates, including those de-

fined as Special Needs inmates. S/he is to work at co-ordinating legal programs to teach both general population and Special Needs inmates the criminal & administrative workings of law at a level which any program participant can comprehend as well as the well being and welfare of all NJDOC at NJSP inmates seeking legal aid — especially those most in need, defined as Special Needs and effective communication of words, ideas and understandings between assigned paralegals under her/his department and mentally challenged inmates.

18. Defendants John & Jane Doe's are potentially discovered personnel of the NJDOC and/or sub-contractors for NJDOC and/or parole board personnel & affiliates whose job descriptions, places of employment and/or further information is just unavailable at this juncture whom at all times mentioned herein were responsible for their own actions/inactions and/or the welfare of all plaintiffs to this action

19. Each defendant is sued individually and in h^er/is official capacity. At all times mentioned in this complaint each defendant acted under the colour of State law.

# III. FACTS

20. At all times relevant to this matter, Plaintiff Stephen Bolling Resided at Trenton NJSP within the Administration Segregation Control Unit ASCU, or Mental Health Crisis Stabilization Unit MHCSU or/and within NJSP settings under NJDOC control.

21. On Wed 21 Nov 18 Defendant Dr. M. Dettore had plaintiff Bolling arbitrarily placed into mental health crisis stabilization MHCSU Unit for alleged suicide precaution. Plaintiff Bolling has been incarcerated for thirty-five years (35yr) under psychiatric care yet never once attempted or threatend to harm himself. (Ex AA-1 & 2)

22. On Wed 21 Nov 18 Defendant Dr. F. DeFilippo authorized the placement of plaintiff Bolling into MHCSU. Defendants (F&LNU) Commissioner NJDOC Defendant Bruce Davis & Defendant Charles Sears Knew, and/or reasonably should have known, that Bolling was placed arbitrarily into MHCSU. and subjectively approved of placement. (Ex AA-1 & AA-2)

23. On Wed 21 Nov 18 through Mon 26 Nov 18 while subjected to MHCSU Bolling was forced to sleep on the floor, eat reduced calorie cold finger food only meals consisting of either (2) two peanut butter or either (2) two cheese sandwiches x3 for each of three (3) meals his entire stay in MHCSU, exist in a malfunctioning 'suicide gown' which continually left him nakedly exposed, and to eat this 'finger food' only without being permitted soap to wash his urine & feces soiled hands or eating utensils on which to hold sandwiches. Days later Bolling was not even given water and/or soap to prepare his hands for meal eating. (Ex AA1-AA BB-1 & BB-2)

24. On Fri 23 Nov 18 Defendants Hansen & Santos breached security protocols for mentally challenged prisoners in MHCSU while under alleged 24/7 constant camera watch by opening Bolling's secured cell door, entering therein proceeding to physically assault, sexually assault & threaten Bolling while battering him. (See Ex Exhibits A1-A6 herewith).

25. On FRI 23 Nov 18 Defendants Hansen & Santos pulled plaintiff Bollings arms down and forward while racing toward a brick & concrete wall inside cell #10 MHCSU on 2EE at Trenton Prison. Bollings head was rammed into the brick wall. This caused Bolling physical injury, pain, numbness and emotional disorder still present upon Bolling. During this battery Santos pointed to something on his waist and stated to Bolling "If you dont stop yelling for your food Im gonna ram this in and out of your ass like a bucket going into a well like youre Abdullah Lemuma". Bolling refused to lie down as instructed because he was nude however he told defendants he would kneel as the defendants Hansen & Santos released Bolling and backed out of the cell. (Exh-AA) (Exh-A1-A6)

26. When late medication rounds were made by Registered Nurse R/N Rich whom plaintiff Bolling personally knew from Bollings long term stay as a resident of mental health unit and explained he needed treatment medically for his pain & numbed injuries from assault/battery R/n Rich contacted Area Supervisor of custody and reported the incident and Bolling was escorted to main medical clinic at prison without surveillance where a very dimly lighted, brief, superficial visual inspection devoid of fact finding evidence of injury, performed by on duty nurse Sue (oriental Sue). ([illegible]) SORRY DYSLEXIA (Exh-A1 [illegible])

27. During the main clinic visit escort officer and defendant Mohommad kept battering plaintiff Bolling by visably & annoyingly placing his back hand against Bollings right facial side attempting obviously to irritate Bolling to violence as Bolling is portrayed commonly as an autistic nut special needs whom will fight. Sgt. Harris helped Bolling fill out legal forms & PREA form in presence of 2 female nurses and 3 officers then placed Bolling into "Dry cell" 1C for seperation from his attackers. (Exh-A1) Bolling never fought back or resisted. (Exh A1)

28. On Mon 26 Nov 18 Defendant Dr. F. DeFilippo spoke with Bolling in 1C Dry cell. Dr. DeFilippo arrived to notify Bolling his suicide precaution hold was now legally cleared due to thanksgiving holidays it was delayed as psych team psych doctors noted and started Bollings release papers before he was even admitted practically or assigned a MHCSU cell on Wed 21 Nov 18 due to incredulousness that Bolling was even sent to MHCSU. Bolling asked Defilippo if she even believed his story of being assaulted to which she answered "Yes". When Bolling asked her for help Ms. DeFilippo asked "what do you want me to do?" Bolling responded "Help me file charges". Defilippo stated "thats not what I do, this is prison, these things happen". Bolling felt helpless as an autistic he relies on assistance because thats what he's known as Bolling is easily confused, forgetful, fustrated and doesnt make good life decisions on his own. (Exh-B1)

29. During Bollings stay on MHCSU & 1C after being physically & sexually assaulted and battered, even upon notification to R/N Rich initially Bolling clearly stated to all nurses and upon psychiatric medication times that his neck, back & shoulder hurt as direct results of assault & battery. Emotionally & mentally the prison psychiatric doctor Leonard reviewed close camera video recordings of Bollings stay on MHCSU & 1C before & after the assault & batteries and immediately placed Bolling on Post Traumatic Stress Disorder medication Prasodone (generic minipress) widely given to treat Iraqi soldiers returning from tours of duty. (C-1 & C-2)

30. Immediately upon release from 1C Dry Cell MHCSU Bolling was taken to a room for Special Investigation Division (SID) interrogation concerning the reports Sgt. Harris help Bolling fill out night of assault & battery. Bolling spent about 40 minutes there, was told if things checked out he would be interviewed

Again [illegible] same Monday, about 3:30pm SID investigators Kimmel & Maroles called Bolling back and retained about an hour seemingly, of live video recounting by Bolling of the entire abusive episode culminating in assault & battery after finding that his initial account was very credible. (Ex A1-A2-A4-A6)

31. On Mon 26 Nov 18 Bolling immediately began filing MR-007 medical help request forms to be meaningfully examined physically & psychiatrically as things just weren't A'ight. On Thur 29 Nov 18 Bolling was escorted to main clinic at Prison for two x-ray photo's of his right shoulder only. FN-1* Bolling would verbally communicate, file MR 007 requests & seek meaningful medical/psychiatric help beyond two ex-rays but nothing more was given. On information/belief the prison administration was obscuring treatment consults hoping the assault & battery would go away. (E1 thru E12 emp E8). To date 19 Sept 19 Bolling suffers pains, he exercises good but with much pain.

32. On Mon 3 Dec 18 prison psychiatric Dr. Leonord consulted Bolling and immediately placed Bolling on psychiatric medication presodone (minipress) for help Bolling deal/cope with trauma caused and post traumatic stress disorder from the assault & battery occuring day after thanksgiving '18. On this Mon 3rd Dec 18 evening the prison Administration directed Bolling be packed up for prison transfer, a highly suspect directive falling just 10 days after Bolling was assaulted & battered, some 2½ weeks before Bolling's administrative segregation control unit (ASCU) punitive time was to expire, more & less further reasoning however the main burden of proof that right at this point, 10 days in, the Prison Administration knew they had a problem on their hands with the Bolling matter and began attempting to harass, discourage, assault, impede, default this Bolling matter, is that any voluntary transfer out of the prison facility at this juncture would have killed the SID investigation into the assault & battery as plaintiff Bolling would have then been "out of danger", removed, more from potential harm, etc. Aggrevating this point, the prison administration knows, or very reasonably should have known, plaintiff Bolling is an autistic/dyslexic special needs inmate with serious mental psychiatric/emotional disturbances going on and can not make the best, or even good, life decisions. (Exh-A2) Sergeant Romellino brought packing boxes to Bolling 7 Left ASCU cell door, another distrustful unusual move. (Exh F

33. On/About Tue 4 Dec 18 Bolling was given an institutional charge for refusing a housing assignment/transfer by odious administration at this point because Bolling, with nearly 35 years of penological abuse experience, knew something was suspect about the sudden transfer, end of ASCU, etc and declined the transfer chosing rather to attempt to litigate a hopeful end to abuse of special needs and/or at least make help things get better for special needs, plus ain't no stress in ASCU and Bolling didn't have to interact with people as right then he wasn't wanting to be around anyone, plus population NJDOC is abusive. (Exh-F)

34. On/about this time, believe it was Fri 30 Nov 18 Defendant Dr. DeFilippo & Dr. Baum both visited plaintiff Bolling in ASCU 7 wing together and asked/offered Bolling "If you could go anywhere in the state any prison facility where do you want to go?" The prison administration was so thirsty to detach Bolling from the SID investigation in order to cease investigation into special needs inmate abuse it offered to send Bolling to any institution he desired

---

* FN-1 Bolling immediately began keeping journal notes of everything because dealing with mental health psychiatric illness for his entire lifetime Bolling understands he is easily confused and/or forgetful (theres much lost already) however due to a campaign of assaults, abuse, searches, theft, etc by NJDOC employee's attempting to discourage, impede, delay, default and/or scare plaintiff, journels were stolen. Some parts remain in Bolling's control.

to go to, a move which clearly signals that the Administration knew the Bolling special needs, elderly 60 yr old, imprisoned for 35 years for traffic accident case was no excuse for this abuse, a bad look for NJDOC, true, etc., so when Bolling still refused reassignment the administration began a retaliation campaign against Bolling almost immediately after the traumatic events without any care for plaintiff's mental/emotional/physical stability. (Exh-D1·D2·D3)+(Exh-F1)

35. Plaintiff about/at this time really began a mental breaking at the realization that 2 prison psychiatrists whom he depended upon as an autistic/dyslexic Elderly Special Needs inmate with a lifetime of institutionalization would actually knowingly, or reasonably should be knowingly, participate in a scheme from Administration NJSP/NJDOC to manipulate Plaintiff away from the SID investigation maybe the saddest, most painful hurt of everything that has happened to Bolling to date. Bolling has been manipulated for an entire lifetime by predators playing on his mental defects and emotional instabilities and now 2 prison doctors whom he admired, trusted & depended on were also abusing him. (Exh-D1·D2·D3) & (Exh-F1)

36. Plaintiff Bolling doesn't want to think/talk about this no more now without help. Bolling thinks he has made a showing facially for the Federal Court and prayerfully will at least be afforded a prison paralegal at this juncture, or a real lawyer to present this case better because Bolling is Autistic Special Needs and can't do much better. Bolling will state a claim for each defendant below. There are many much more to this matter however due to an increased campaign of harassment, verbal threats, missing personal property including family names, address's and friends/associates, and other pressures Boll needs to get this complaint before the Federal Court immediately.

37. Plaintiff Bolling on 24 JAN 19 while on escort to a clinic exam for injuries sustained as above stated was assaulted & battered by defendant Newsom when he pushed Bolling attempting to provoke Bolling into physical fight. This occurred on uni 7L ABCU cell #16 on tier reviewable by way of wing tier camera video. (Exh-G1

38. Defendant Reyes wrote plaintiff Bolling an assault charge on 24 JAN 19 because while restrained in handcuffs Bolling tried to step backwards when he lost balance due to Reyes boots, Bolling recovered from fall yet may have brushed the beak of Reyes hat with the back of his head. (Exh-G1 & G2)

39. The charge of assault upon Bolling was subsequently downgraded to unauthorized contact yet it became a noticing warning to Bolling that an all out harassment pursuit upon him was pending. Bolling became scared but not fearful of being pursued nor did Bolling suffer any physical harm, just the addition of emotional trauma at yet another assault & battery upon him with it trying to be excused away like Bolling did something wrong. (Exh-G1 & G2)

40. On/about Wed 1 May 19 Bolling kept the rubber feeding tray which he was given breakfast upon. As Bolling refused to return the feed tray unless an Administrator was there to explain why Bolling had not been assigned a level increase allowing him to regularly access the

wing telephone, to enjoy items he legally pursue like television, spend more money at canteen whereein he could purchase hygenic needs, and play with his mp5 tablet device which he, being autistic, believed was part of his courtline discipline penalty why he couldn't have it or t.v. or telephone. (Exh - H1 thru

41. On/About 1 May 19 when Bolling didnt return the rubber food tray, instead keeping it hostage and no one else could talk Bolling off of the ledge about 5 or 6 defendants shot mace into his cell on wing 7Left ASCU, opened the door and proceeded to restrain and beat Bolling. Upon information and belief defendants Poupart, Mandapt, Groninger, Stuart, Gray and Sgt. Pator entered upon Plaintiff whom is 5ft 4in tall, 145 lbs, 68 years old and Autistic/dyslexic Special Needs. Defendants proceeded to whip Bollings ass. Bolling immediately jumped onto the cement floor upon the defendants entrance where he lied taking restraints, forceful closed fist punches about 4 to the face consecutively, immediately closing his right eye while turning both eyes black, blue & purple, while producing swift draining bloodly leaky nose by defendant Pouparts hard blows while Mandapt was banging Bolling's head back & forth against the concrete floor causing lacerations, bruises, bumps, lumps, abrasions & bleeding. This was done, the punches & head banging with knowledge of wrongdoing by Poupart and Mandapt because just before Poupart delievered his first punch to Bollings face while his fist was still in the air cocked back, loaded closed and/or beginning its decent downward Poupart falsely shouted stop resisting stop resisting to make as though lil light ass Bolling was even trying to resist such force or not comply with such power. Bolling never resisted nor fought back as this entire event was being video recorded and is under control of the NJDOC Commissioner defendant. (Exh - H1 thru H2)

42. On/About Wed 1 May 19 Defendants Capt. Brian Pator & Major Charles Sears orchastrated the fiascal of events leaving Bolling physically torn and emotionally tattered. Defendant NJDOC Commissioner & NJSP Adminstrator Bruce Davis knew of the harassment & assault/battery campaign being inflicted upon Special Needs prisoner Bolling and did nothing to change and/or make right the injustices confronting Bolling. (Exh all above & H1-H2)

43. On/About Wed 1 May 19 around 10 45/am Bolling's last limb, his left arm/wrist was restrained immediately upon ceaseation of the beating assault & battery by defendants at claim #41. Defendant Poupart was kneeling upon Bolling's right shoulder during the battering, Poupart is a very large man and Bolling is a very tiny man, thus Bollings left arm was pinned between the concrete floor, Bollings own left side sandwiched in middle, with Poupart's weight & Mandapt' weights atop of his right shouldre & head as he lay in fetal postion. Bolling now fully restrained after yelling to Poupart that he wasn't resisting, had numbness and pins/needles pains all in his back, neck & shoulder areas and couldn't walk fast or long and was thus dragged by handcuffs secured about his wrists in front from ASCU 7Left cell #16, through prison corridors, up/down ramps, through

centre prison rotunda to North/South/West compound tier ing where Poupart and Mandapt stopped dragging Bolling (this was a good distance) to be relieved with two or three fresh officers whom now dignified Bolling with a slow walk to main clinic. (Exh-H1-H2)

44. Plaintiff Bolling was bloody and batterd so nurses Scott & McIlquene immediately began clean up of Bolling by stopping the nose bleeding, the head abrasions bleeding and lacerations while wiping away blood from his now completely swollen shot right eye. Bolling's neck, back & shoulder pains from initial injury/and or something new/was in pain also along with his head & face now. (Exh-H1-H2)

45. Sgt. Patoe, officers Mandapt & Poupart along with video recording personnel now escorted Bolling up to unit 3B Left, cell #12 (A known or what reasonably should have been known "Blind cell") where Bolling was humiliatingly left butt naked without anything of his own, not even a sock. Bolling would remain as such getting what was left of his personal property delivered to him some ten 15 days later from Theft cell #16 and based on knowledge & belief SID and/or Administration had control of his property during this 10 day interval as many legal journal papers & personal property was suspiciously absent/missing. Bolling has somehow managed to hide some legal material he wrote upon away and now has some legal chronological detailed written journeling of all four assaults, help requests, aid given, witnesses, dates, times, etc as Bolling is a little skilled at doing prison time and foreseeing harassment tactics as Bolling was skeptically forewarned by the instant urging "to go anywhere you want" offer from Administration (Exh-K1&K2-K3-K4)

46. Plaintiff Bolling on Tue 4 June 19 amazingly took yet another violent assault & battery and abuse in the Administrations campaign to fustrate, impede, dely, retaliate, aggravate, moot Bollings 23 Nov 18 claim. As Bolling prepared for Saint Francis MRI scan medical escort by striping naked, reapplying only boxer briefs, upon steping across arch of his cell door way into 3BL teir way he was met with a swift forceful closed fist out of nowhere from Defendant McLean This occured around noon and as well should be on video camera film* FN-2 (Exh-K6 thru K13)

47. Defendant McLean and others continued to punch, bang Bolling head, kick his ribs, assault & batter Bolling while his old sole refused to be drawn into physical fighting despite attempts to pull him into violent confrontation ever in 35 years despite his being portrayed as such against staff anyway, inmate population is different. Because Bolling cant wait any longer to file with courts (See Exhibit L1) he must file without benefit of OPRA discovery & without video viewing himself of who was involved in this assault & battery, or without any idea of what correctional officers outside of McLean kicked, punched, banged and/or abused him. Officer Mejia was one kicking at Bollings ribs which felt fractured for six weeks after. Plaintiff felt pain and suffering and reinjure of neck, back & head.

---

All four of these assault & battery abuses to Plaintiff Bolling from 23 Nov 18 thru 4 June 19 should be captured live on video based on information & beliefs. This 4 June 19 battery included, despite Admin Judge Cortes insisting no clear video exists Bolling paid for OPRA papers on Fri 16 Aug 19 yet Administration is withholding delivery (Exh-I1)(Exh-

48. Plaintiff has continually sought medical help for his physical injuries here and throughout these assaults. There has been no medical consult post x-ray taking of his ribs to clarify what injuries Bolling suffered in this attack. To date Plaintiff Bolling has aches, pains, distress, injury throughout most of his body, including & especially his head, neck, back & right shoulder as well as emotional disorders and sufferings of the mind so traumatic Bolling tries to block out memories of these beatings. Its sad to treat mentally challenged, elderly and/or incarcerated people like this. (Exh-I1 ~~through~~ J3·K1·K2) (Exh-E7 thru E13)

49. Plaintiff was seen once on Thursday 6 June 19 at main clinic Trenton after his initial brief medical check day of the assault, new present assault be clear. Had X-rays taken of hurt ribs from being kicked and punched throughout his body. Apart from this consult, Bolling remembers all medical consults about three (3) total taking place on the B block confines as the doctor would always come to visit him like a house call which Bolling thought was odd, in his 35yrs of jailing, he couldn't recall ever having an entire summer, from May ending June actually, July & August 2019 prison medical doctor visited him on block. After oral conversation of Bolling's medical problems/conditions Doctor Jackson would always find one off subject like COPD, blood pressure some undistinguished condition plaintiff never wrote about/for and comment "I [Dr. Jackson] don't have your chart in front of me - let me review your medical chart and I'll ~~put up~~ bring you up" or then we'll talk or we will go from there. Another month would elapse, I would file a medical MR-007 and this indistinct process would repeat each 4-6 weeks over summer of 2019. Some, most of summer Bolling wouldn't have to file medical request, or inquiry/grievance, just give a week or two & Dr. Jackson would arrive with another campaign promise to fix something. Little did plaintiff realize, due to autisim/dyslex special needs, that he was being manipulated without direct words/instructions to default medical requests writtenly for specific medical help due to physica assaults he had endured. (Exh-E7 thru E13 & M1 & M2 & H1 & H2)

50. Especially on 1 May 2019 assault aftermath and 4 June 19 assault aftermaths, like currently now, Bolling is awaiting an alleged MRI scan rescheduling since 4 June 19, actually since original sexual assault of 23 Nov 18, Bolling, maybe due to mental health is led continually on a side issued trail leading nowhere. Plaintiff Bolling, along with class of special needs inmates can be easily manipulated out of solidifying a medical paper trail to ensure that damages and documented harms physically are in a record when they are led to believe medical needs are being/will be addressed although they rarely were/are. Aight this is very sad imma go reboot. (Exh-E7 thru E13) (Exh-M1 & M2)

51. Plaintiff Bolling has tried to exhaust Administrative Remedies (Exh-N1 thru N17) this is another place of play upon Plaintiff's infirmaries with crafty gamemanship by the defendant Commissioner & Administrators by simply refusing to aid/accomandate plaintiffs Bollings Special Needs of dyslexia/autisim which Bolling clearly presented in efforts to fustrate, harass, impede, delay, default, etc the Bolling case, these defendants try to

obscure medical Records/Aid, fail to provide a paralegal, legal supples in plain writting paper, supply business office six month account statement, withhold OPRA Records/mail, not allow/aid plaintiff to grieve his claims fully on paper due to autisim/dyslexia & general ignorance of compotor tech world as plaintiff has been in prison since 1986 when 8 track & cassettee players & vynal albums were literally still poping & only way to listen to music more or less, and when things appeared Bolling was going to or determined to file suit the comm & Admin NJDOC-NJSP sent Bolling do/know nothing social service worker. like this is really how the class body of C.F. v. Terhune # 96-1841 (AET) & other mentally challenged are treated in NJDOC. (Exh entirety)

52. Due to plaintiff Bolling drifting in/out of reality Bolling will try to be done soon. Bolling tried to exhaust remedies on regular tangible paper form specifically for that purpose (all grievance attempts herewith) but prison authorities refused to answer grievances on submitted forms chosing rather to answer on ~~text~~ Kiosk machine which is beyond Bollings ability to manage and or keep up with more than 2 or 3 grievances at 1 time. To date Bolling has some 54 issues he was grieving for this big case, there are four seperate physical attacks, courtline, medical, psychiatric, video security failings etc. All in play which overwhelms special needs Bolling. (Exhibits entirely)

53. Plaintiff ~~Defendant~~, based on knowledge and belief is not stupid nor uneducated, Bolling is "special needs" Autistic/dyslexic as those two "special needs" words have significant meaning. Some things he just cant do well and others he does very well. For example Bollings "Jail game" is a little tuff because from the outset of the physical & sexual assault/battery upon him he realised once the Administration & NJDOC commissioner offered to send him any-prison he wanted to go ten days after the assault/battery he anticipated the NJDOC-NJSP Administration would/was going to launch a harassment/fustration campaign against him and his filing legally due to his special needs condition. Bolling remained a step a head of having his case/assault journeling taken/stolen, as was attempted many times, by always leaving as much of his journal notes outside his assigned cell and retriving them as necessary. (Exh-Integrity court journal fili

54. Plaintiff ~~Defendant~~ in order to protect the integrity of this honest filing will supplement the complaint & Exhibits with his dated journeled written notes of pains and harms suffered, who, whats, where, when etc. As best as his nutty lil ~~ass~~ was able to maintain from date of being arbitrarily placed on "suicide precaution" MHCSU. Bolling isnt good at writing, journeling, he drifts, but so what, a journel is preserved except few days at beginnings of assault attacks upon him. (Journels enclosed) Yeah- I REBOOTED MR. COMMISSIONER! (Exh-Entire Integrity Court Journal Filings herewith)

55. On behalf of all NJDOC special needs inmates we will make our exhaustion of legal ~~claims~~ Remedies, legal claims, Prayer for Relief & Verification, close this filing and have it into the wind to an ~~Fed~~ Honorable Federal Judge ~~by~~ Sunday 22 Sept 19 evening.

56. Based on information and belief the institutional courtline proceedings Plaintiff Bolling was subject to were a sham, as well an example of 35yrs of courtline hearings and/or alleged institutional infraction charges upon the mentally challenged NJDOC inmates, as the record will reflect on completion of this claim by a skilled attorney. The hearing officer Judge Cortes on information and belief, willingly participated in distorted Bollings institutional infraction records as acting in concert with other NJDOC Admin. Hearing Officers during Dec 18 through 22 Sept 19, priorly Admin H/O were as the records reflect. Upon further discovery these exact claim statements will be developed. (Exh-C2·E6·H2·m1&m2)

57 Based upon information and belief the NJ Parole Board by relying upon distorted/unreliable institutional infraction records in part rendered the entire decision making process a mockery upon plaintiffs parole eligibility proceedings. As well by subjecting plaintiffs to severely larger penalties were in play today as opposed to penalties at play when plaintiffs entered into the NJDOC penological systems which have subjected plaintiffs to heavier penalties than those applicable at the time of penal offense commissions. (Exh-C2·E6·H2·m1&m2)

58 Based upon information and belief defendant Manpoing was present during one of several illegal search and kill harasment campaign's upon plaintiff Bolling on/around Tuesday 27 Aug 19 around 8:00/am when Bolling had another break from reality during kiosk 20 minute session. during while Bolling was breaking defendant whom was allegedly on unit due to another force medication matter, intervened into the Bolling matter and had, participated and/or knew that Bolling's cell was being and/or going to be illegally searched and personal property along with family/friends personal informations erased and/or defendant did nothing to prevent this from happening. (Exh-01-05)

59. Based on information and belief defendant Peterson was present during Tuesday 27 Aug 19 search and kill campaign and as ranking senior advisor to all present participants aided and abetted the illegal search and confiscation of legal filings, notes related to this matter with personal information seazures and property seizures and/or did nothing to prevent escalation of harassment upon Bolling. (Exh-01-05)

60. Based upon information and belief defendant Archebald was present and actively participated in the torments of Fri 23 Nov 18 physical/sexual assault by failing to log in the 2EE unit MHCBU log book that plaintiffs ~~ex~~secured cell door was breached and illegally opened, and/or that physical/sexual assault and battery had occured, and/or that defendant Archebald stood outside of Bollings cell door about an hour or two after dinner had been served to entire 2EE MHCBU & MHRTU while Bolling was not given anything to eat for dinner and taunted Bolling by eating a wonderful looking taco and verbally pestered Bolling about how great the taco tasted, etc. (Exh ALS Video statement given to SID of incident by Plaintiff Bolling 26Nov18 As well Archebald failed to report this physical/sexual assault & battery.

(60.A) Based on information and belief Ms. Michelle Ricci is and was at all times mentioned herein the Major/Commissioner Asst. in charge of NJDOC custody and promoted & and/or knew, or reasonably should have known plaintiff Bolling case was a problem legally & morally but did nothing to de-escalate problem and rather acted to escalate, impede, default and hide criminal & civil wrongdoings. Ricci is as Jane Doe #51 depicted at caption.

61. On information and belief the NJDOC Lead Classification Officer and/or their Agents kept distorted, unreliable and sham institutional Records of plaintiffs and/or used these documents to oppress and imprison inmates till death in some cases. The lead plaintiff Bolling has been incarcerated since 30 July 1986 serving a thirty year to life single sentence, was parole eligible 19 July 16 where he recieved a ten year hit and at present cant even be eligible for P.E.D. until 01 Sept 2026 for a traffic accident which is contrary to evolving standards of decency and had plaintiff Bolling not foresaw the approaching campaign of harassment/assault he would be subjected to in order to confuse, distort, sham prison reality in preceding months and protect him self in advance from having notes, documents, journals etc secure then he would not have been able to show how obsured, bloated, twisted & disproportionate prison reality is from actual existance. (Exh- Entire filing)(Exh-P1). these tactics employed against defendants are not new or dissimilar to the class depicted herein, infact these sureal NJDOC expedients upon prison existence are so distinguishable from real events that plaintiff Bolling easily foresaw their signaling approachment upon " if you could go anywhere, where would you like to go" and braced himself for upcoming battle against harassments/assaults best he could. (Exh- Entire filing) (Exh-P1; R1; R2; Q1-Q2-Q3

62. On information and belief something is not right Honorable Court. Plus I keep drifting in & out of reality and this filing is becoming to confusing to understand. I know what I want & need to say but autisim wont allow it to get to this paper. Please know im trying hard and give meaningful weight to my special need (Autism/dyslexia) and that the NJDOC Commissioner is orchastrating an entire campaign against me to keep me from getting to your Honorable Courtroom! I dont know law or legal stuff and what I once understood is lost and/or confused now. Something is really pressing me your Honor to get these papers before the Honorable Court. Maybe that I think this entire case includes alot of criminal wrongdoing, and probably being a Federal PREA crime was committed this matter is a Federal Crime and your Honor has authority to commit any and all resources at your Honorable disposal to mete justice with these events/crimes. Nobody is telling/helping/instructing me and things seem too wrong herein for such stillness. I did try/attempt to press charges criminally (Exh-A2 & A4) and civilly. Nobody tells me anything, nobody helps me your Honor on 4/9/2019 I asked central office NJDOC and the text (Exh-AA) says this matter is being refered to Special Investigation Division SID or Prison Rape Elimination Act (PREA) Unit Central. (Exh-AA). I am being tasked beyond my ability again your Honor, like trying to mainstream the prison population, autistically ~~I can~~ reason, think & understand, learn things most times but my thoughts intrinsically cant come out abstractly most time plus im dyslexic and things get all confusing. I need assistance. May the Honorable Court docket this case please and some things I need immediately Your Honor...

1) If the NJDOC-NJSP desires I grieve these exhibited grievance forms any further they have to allow me to do it Your Honor. Not only is the prison Administration trying to answer (me) these paper grievance filings (tangible) on the text kiosk machine and expecting my nutty lil autistic/dyslexic ass to figure everything out, the prison isnt giving me an assistant Paralegal at bottom to aid me Your Honor. (Exh-S1 through S4) Truly id like to see you allow me to proceed without exhausting remedies due to the defendants arrogance and pathetic attempt to manipulate the mentally challenged. Amin.

2) Im going to require professional assistance Your Honor on the street-side. I think this Honorable Court has discerned that this case is very, very, real and serious, involving potentially the criminal indictment of the NJDOC Commissioner right through under links for conspiring (colusion) to cover up a prison physical/sexual assault & battery. This case is non-frivolous, its complecated, I cant present it, witness's will need cross examination etc, investigation, research and more beyond my means. At bottom for now you will have to order a prison paralegal to help me.

You know what Your Honor, you know what I need, what, how to handle this matter. I'll enclose every piece of writting I have to preserve the integrity of this

whole case. I'll do my best to get it to your Court Your Honor. Im a little scared for my well being and that of my family/friends because of exhibit 03. Correction Officers kept going into my cell weekly, 27 Aug 19 the same and that search & seizure came with a warning for me to stop filing legal grievance papers or its going to get worse for me and my family. My family's personal address were taken by Officers Zetti, Jennings, Sgt. Manpoing & Lieutenant Peterson. This should all be on video camera Your Honor. I trust you Your Honor - Im not good at life decisions so ill stay in my Autistic lane - the slow lane! Let me pack everything to mail to your Court Clerk Mr. William Walsh. Mr. Walsh been at the Court since I came to prison Trenton in 1986, almost 35 years, what a noble profession & distinguished career! Oh my!

And your Honor one last thing, this filing is for/about the NJDOC Special Needs inmates. All that money damages stuff, yes I need money for my pain & suffering but I live with guys for 35 yrs I see what money did to them and what they did for money - and I dont like money too much. We as a class Special Needs require way/far better than what they are getting here and I would hope you have the power to order the State to designate one of its facilities Special Needs. Just like the Sex Offenders got a facility, drug/alcohol addicted got theirs, civil commetted got theirs, its time Special Needs class, which is large, receive their facility. Again you know best but I dont like to see others abused like ive been for the past year again. Okay Bye!

Certification

I declare under penalty of perjury that the foregoing is true and correct. That my mailings to Court Clerk Mr. William Walsh are inclusive of every & hand written materials known to me concerning when I was physically/sexually assaulted and battered while naked in cell #10 unit 2EE Trenton Prison Mental Health Crisis Stabilization Unit (MHCSU) on 23 November 2018, from being assulted & battered on 24 Jan 19 on unit 7 Left, from being assaulted & battered bad on 1 May 19 on unit 7 Left, and from being assaulted & battered on 4 June 19. Also of every single event, obstruction tactic, attempt to dely, default my court filing of these events since they begun 21 Nov 18 which ultimately culmanated in an offer from NJDOC Commissioner to offer Bolling a transfer to "anyplace he wants to go" attempting 10 days after the 23 Nov 18 assault/battery physically/sexually to seperate Bolling from an ongoing Special Investigation Division (SID) examination of events. When Plaintiff Bolling refused the Commissioner's offer there was an all out harassment campaign launched against Bolling attempting to default, impede and/or fustrate Bolling into not filing with the Federal Court to have his constitutional rights deprivisions redressed. Bolling is a 60 yr old Special Needs autistic/dyslexic prisoner of past 35 yrs for a traffic accident while operating a State Patrol car he commanderd when aggresively/unwarrentedly approached by 3 weapon yeilding state policemen as he feared an attack physically on him then, 35 yrs ago! The Federal Courtroom is beyond Bollings reach as an autistic/dyslexic challenged man and thus he has addressed the Court as best he can under NJDOC restraints of suspended medical, legal, social service, mail services which lie strickly in the purview of defendant NJDOC Commissioner and his agents. Bolling cant possibly due anymore and can no longer delay filings to Federal Court as on Tue 27 Aug 19 & Mon 16 Sept 19 his prison cell was again enterd upon by custody officers, sergeants & lieutenant whom conducted illegal paper searches and confiscated Bollings personal property, personal family/friends address, personal legal papers Bolling had for filing and on 27 Aug 19 Bolling was given a verbal threat from custody officer to "stop filing legal grievance papers or its going to get worse for you and your family. Bolling is scared but he doesn't fear.

Dated: Sat 21 September 2019.

Respectfully submitted,
Stephen Bolling
Plaintiff: Stephen G. Bolling
208254/792911A